**SECOND DIVISION**
**BARNES, P. J.,**
**MILLER and RAY, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules/

June 12, 2013

# In the Court of Appeals of Georgia

A13A0124. JACKSON v. THE STATE.

RAY, Judge.

Yusef Jackson was indicted for the offenses of malice murder (OCGA § 16-5-1 (a)), felony murder (OCGA § 16-5-1(c)), possession of a firearm during the commission of a crime (OCGA § 16-11-106), and possession of a firearm by a convicted felon (OCGA § 16-11-131). Following a jury trial, Jackson was found guilty of possession of a firearm during the commission of a crime based on the theory of party to a crime, but he was found not guilty of the remaining offenses. He appeals from his conviction and the denial of his motion for new trial, contending that the evidence was insufficient to support the verdict, and that the jury's verdict of guilty as to possession of a firearm during the commission of a crime and not guilty as to possession of a firearm by a convicted felon is inconsistent and mutually

exclusive. Jackson also contends that the trial court erred in denying his motion to dismiss and bar prosecution based on the violation of his constitutional right to a speedy trial. For the following reasons, we affirm.

1. Jackson contends that the evidence was insufficient to support his conviction of possession of a firearm based on party to a crime. We disagree.

> On appeal from a criminal conviction, we view the evidence in the light most favorable to the verdict, and the defendant is no longer entitled to a presumption of innocence. We neither weigh the evidence nor judge the credibility of the witnesses, but determine only the sufficiency of the evidence in accordance with the standard set forth in *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).

(Citation omitted.) *Clark v. State*, ___ Ga. App. ___ (738 SE2d 704) (2013).

So viewed, the evidence shows that on July 5, 2006, Torrence "Cooley" Roston was shot and killed as he was going to the bathroom outside of a Savannah night club known as Frankie J's. Several witnesses testified that there were two assailants involved in the shooting, but no one was able to affirmatively identify the shooter.

Jackson was considered a suspect immediately after the shooting. A few weeks before the shooting, Roston and his friend, Conrad George, had attacked Jackson inside Frankie J's and badly beaten him. During their investigation after the shooting,

2

the police searched the car that Roston had been driving and found Jackson's ID in the vehicle. Jackson's phone records put him in the area of the shooting at the time of the crime, and his phone records also indicated that he had been in contact with another individual, Anthony Joyner, minutes before the shooting occurred. During the investigation, Joyner provided statements to the police that he had called Jackson on the night of the shooting to purchase drugs from him and that he had mentioned to Jackson that Roston was at Frankie J's that night. After Joyner purchased drugs from Jackson, Jackson had stated to Joyner that he was going to "F that – straighten that F nigger out." However, as the evidence against Jackson was weak and circumstantial, he was not arrested or charged at that time, and the investigation became cold.

In August 2006, Jackson was arrested on unrelated charges for which he was ultimately convicted. While Jackson was in Coastal State Prison, he was housed in the same dormitory with another inmate, Stacy Faison. After Faison was transferred to another prison facility, Faison contacted the district attorney in Savannah in November 2007 to offer information that he had learned from Jackson concerning the shooting. Detectives from the Savannah Police Department went to talk to Faison on November 16, 2007, and he told them that Jackson had admitted to him that he killed

3

Roston because Roston had beaten him up and that Roston had taken his ID after the fight. Specifically, Jackson said that he and an individual referred to as "T" shot Roston as he was going to the bathroom outside Frankie J's. Based on this information and the subsequent follow-up investigation concerning Faison's statements, the State indicted Jackson on April 21, 2010.

OCGA § 16-2-20 (a) provides that "[e]very person concerned in the commission of a crime is a party thereto and may be charged with and convicted of commission of the crime." And a person is a party to a crime if that person "[d]irectly commits the crime; . . . [i]ntentionally aids or abets in the commission of the crime; or [i]ntentionally advises, encourages, hires, counsels, or procures another to commit the crime." (Punctuation omitted.) OCGA § 16-2-20 (b) (1), (3) and (4). See also *Collins v. State*, 229 Ga. App. 210, 211-212 (1) (b) (493 SE2d 592) (1997).

Here, Jackson's statements to Faison indicate that Jackson had decided to kill Roston and that he and another individual participated in the shooting. "The testimony of a single witness is generally sufficient to establish a fact." (Citation omitted.) *Smith v. State*, 319 Ga. App. 590, 591 (1) (737 SE2d 700) (2013). Furthermore, Faison's detailed account of what Jackson had told him was corroborated by the testimony of other witnesses at trial. Lastly, it is well settled that

4

a defendant may be convicted of possession of a firearm during the commission of a felony even though the defendant is acquitted of the underlying felony. *Coleman v. State*, 286 Ga. 291, 295-296 (4) (687 SE2d 427) (2009); *Lawrence v. State*, 274 Ga. 794 (2) (560 SE2d 17) (2002). Accordingly, there was sufficient evidence to establish that Jackson was a party to the crime of possession of a firearm during the commission of the crime of murder. See *Collins*, supra at 212 (1) (b).

2. Jackson contends that the trial court erred in denying his motion to dismiss and bar prosecution for violation of his constitutional right to a speedy trial. We discern no error.

Although Jackson was immediately considered a suspect in the shooting death of Roston in July 2006, the evidence against him at that time was circumstantial until Faison came forward in November 2007, with Jackson's jailhouse confession. By that time, a potential witness, George, and a potential co-defendant, Teonne Spencer, had died. Thereafter, the State's follow-up investigation of the information provided by Faison was not completed until February 2010, and Jackson was indicted on April 21, 2010. Jackson filed a statutory demand for a speedy trial on August 30, 2010, and the motion to dismiss based on violation of his constitutional right to a speedy trial on November 12, 2010.

Jackson alleges that his constitutional right to a speedy trial was violated because of the State's four-year delay in the investigation prior to his indictment, and that the delay was presumptively prejudicial because it prevented him from interviewing potential witnesses and a possible co-defendant. However, the right to a speedy trial under the state and federal constitutions attaches at the time of arrest or when formal charges are brought, whichever is earlier. *Wimberly v. State*, 279 Ga. 65, 65 (608 SE2d 625) (2005). Here, Jackson's constitutional right to a speedy trial attached at the time of his indictment, since he was already incarcerated for an unrelated conviction at the time the State brought the charges against him. *Rogers v. State*, 286 Ga. 387, 387 (688 SE2d 344) (2010) (where defendant was serving a sentence on an unrelated charge when the indictment was returned, the date of the indictment was the date upon which his right to a speedy trial attached). Thus, the focus of the trial court's analysis was on the six-month, twenty-three-day period between the return of Jackson's indictment on April 21, 2010, and the filing of the motion to dismiss on November 12, 2010. See Id.

In determining whether a defendant's constitutional right to a speedy trial has been violated, the trial court must engage in a balancing test in which the court assesses the "[l]ength of delay, the reason for the delay, the defendant's assertion of

6

his right, and prejudice to the defendant[,]" together with such other circumstances as may be relevant. (Footnote omitted.) *Barker v. Wingo*, 407 U. S. 514, 530-533 (III) and (IV) (92 SCt 2182, 33 LE2d 101) (1972); *Wimberly*, supra at 66. However, the trial court was not required to engage in the balancing test unless Jackson has shown that the delay since his indictment is "presumptively prejudicial." *Wimberly*, supra.

In this case, Jackson failed to show that the approximate seven-month delay since his indictment was presumptively prejudicial. Jackson's argument, both in his motion to dismiss before the trial court and on appeal to this Court, is based on the assertion that the four-year delay *prior* to his indictment was presumptively prejudicial. As noted above, Jackson's constitutional rights to a speedy trial did not attach until his indictment. "Where the delay occurs in the investigative stage before either arrest or indictment, due process, not sixth amendment, standards apply." (Citation and punctuation omitted.) *Roebuck v. State*, 277 Ga. 200, 205 (4) (586 SE2d 651) (2003).

> A due process violation requires a finding 1) that the delay caused actual prejudice to the defense, *and* 2) that the delay was the product of deliberate action by the prosecution designed to gain a tactical advantage.

(Citation and punctuation omitted; emphasis in original.) Id.

7

Jackson contends that the four-year delay between the shooting and his indictment was prejudicial because potential witnesses and a possible co-defendant are now deceased. However, "any prejudice which results merely from the passage of time cannot create the requisite prejudice." (Citation and punctuation omitted.) Id. Furthermore, the record shows that the delay between the shooting and the indictment was the result of the State's decision to conduct further investigation, and the "[d]elay occasioned by the ongoing investigation of a case does not rise to the level of a due process violation." (Citations omitted.) Id.

As the circumstances of this case warrant the finding that Jackson's allegations of pre-indictment delay do not amount to a due process violation, and because Jackson failed to show that the six-month, twenty-three-day delay between Jackson's indictment and the filing of his motion to dismiss was presumptively prejudicial, the trial court did not err when it denied Jackson's motion to dismiss based on a purported violation of his constitutional right to a speedy trial.

3. Jackson contends that the jury's verdict of guilty to possession of a firearm during the commission of a crime based on party to a crime and not guilty to possession of a firearm by a convicted felon is improper because it is inconsistent and mutually exclusive. We disagree.

8

In *Milam v. State*, 255 Ga. 560, 562 (2) (341 SE2d 216) (1986), our Supreme Court adopted the reasoning of the U.S. Supreme Court in *United States v. Powell*, 469 U. S. 57, 64-67 (105 SCt 471, 83 LEd2d 461) (1984), and abolished the rule against inconsistent verdicts. The essence of the holding in *Powell* is that appellate courts need not invalidate a conviction on one offense (such as the offense of possession of a firearm during commission of a crime in the present case) which is logically inconsistent with an acquittal on another offense (in this case, possession of a firearm by a convicted felon) because the appellate court cannot know and should not speculate why a jury acquitted on one offense and convicted on the other offense. *Powell*, supra at 65-66. The reason could be an error by the jury in its consideration or it could be mistake, compromise, or lenity, but as a matter of prudence, the conviction on the one offense should be upheld so long as the evidence will support it. Id.

Jackson contends that the jury's verdicts of guilty as to the possession of a firearm during the commission of a crime and not guilty to possession of a firearm by a convicted felon are mutually exclusive. However,

> [V]erdicts are mutually exclusive where a guilty verdict on one count logically excludes a finding of guilt on the other. Thus, the rule against

9

mutually exclusive verdicts applies to multiple guilty verdicts which cannot be logically reconciled; the rule is not implicated where, as here, verdicts of guilty and not guilty are returned.

(Citation and punctuation omitted; emphasis omitted.) *Turner v. State*, 283 Ga. 17, 20 (2) (655 SE2d 589) (2008). While Jackson's enumeration of error speaks in terms of mutually exclusive verdicts, the basis of his argument is that the verdicts are inconsistent. And as noted above, our Supreme Court has abolished the rule against inconsistent verdicts. *Milam*, supra.

The sole exception to the abolition of the inconsistent verdict rule applies "when instead of being left to speculate about the unknown motivations of the jury the appellate record makes transparent the jury's reasoning why it found the defendant not guilty of one of the charges. . ..." (Citations and punctuation omitted.) *Turner*, supra at 20-21 (2). The record before us, however, does not invoke that exception because it contains nothing that makes transparent the jury's reasoning for finding Jackson not guilty on the possession of a firearm by a convicted felon. Furthermore, based on our holding in Division 1, there was sufficient evidence to support the guilty verdict on the possession of a firearm during the commission of murder based on party to a crime. Therefore, Jackson's conviction for possession of

a firearm during the commission of a crime is valid. *Morrell v. State*, 313 Ga. App. 443, 445-446 (1) (721 SE2d 643 (2011).

*Judgment affirmed. Barnes, P. J., and Miller, J., concur.*