**FIRST DIVISION**
**PHIPPS, C. J.,**
**ELLINGTON, P. J., and BRANCH, J.**

**NOTICE: Motions for reconsideration must be**
***physically received* in our clerk's office within ten**
**days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules/**

**March 27, 2014**

# In the Court of Appeals of Georgia

A13A2204. SALAZAR v. THE STATE.

PHIPPS, Chief Judge.

Following a jury trial, Juan Salazar was convicted of trafficking in cocaine,[1] and acquitted of operating a vehicle with a false or secret compartment.[2] On appeal, he challenges the sufficiency of the evidence to support his conviction and the denial

---

[1] OCGA § 16-13-31 (a) (1) (C) (pertinently providing that a person commits the offense of trafficking in cocaine when he possesses 400 grams or more of cocaine or of any mixture with a purity of 10 percent or more of cocaine).

[2] OCGA § 16-11-112 (c) (1) (providing that it is unlawful for any person to knowingly operate any vehicle containing a false or secret compartment); OCGA § 16-11-112 (a) (1) (A) (a false or secret compartment "means any enclosure which is integrated into or attached to a vehicle and the purpose of the compartment is to conceal, hide, or prevent discovery by law enforcement officers of: . . . (ii) Controlled substances possessed in violation of Article 2 of Chapter 13 of [Title 16 of OCGA]").

of his motion to suppress evidence obtained during a search of the vehicle he was driving. For the reasons that follow, we affirm.

1. Salazar contends that the evidence was insufficient to support the conviction for trafficking in cocaine "because the jury did not convict [him] on the predicate offense of knowingly driving a vehicle with [a] false compartment." He asserts that the jury could not have found that he possessed the drugs, given its finding that he had not knowingly operated a vehicle with a false compartment. The contention is without merit.

> When an appellant challenges the sufficiency of the evidence to support his conviction, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. The appellant no longer enjoys a presumption of innocence, and an appellate court determines only the legal sufficiency of the evidence and does not weigh the evidence or assess the credibility of the witnesses.[3]

The evidence showed that on January 28, 2010, Salazar was driving a tractor-trailer on I-20 in Douglas County when a police officer initiated a stop for failure to

---

[3] *Simmons v. State*, 299 Ga. App. 21 (1) (681 SE2d 712) (2009) (punctuation and footnotes omitted).

2

maintain lane. As the officer approached the stopped tractor-trailer, he observed that Salazar had already exited the cab of the truck. To the officer, Salazar's manner of breathing indicated that he was nervous; Salazar also "pace[d] back. . . like he was slowly trying to get [the officer] away from the truck." Salazar told the officer that he was delivering a load of produce to Atlanta, though he did not know the specific destination.

The officer returned to the patrol vehicle to check Salazar's driver's license and the truck's license plate, and to review the freight documents Salazar had handed him. The officer noticed several discrepancies in the documents. He radioed dispatch to check Salazar's driver's license and the license plate, and began writing a warning citation for the alleged lane violation.

For several reasons (which were articulated at the suppression hearing and at trial), the officer became suspicious.[4] The officer left the patrol vehicle and asked Salazar for permission to search the truck's cab. Salazar consented.

When the officer looked inside the truck's cab, he noticed that the fabric on the ceiling did not match other fabric in the cab. The officer, now joined by a second officer, pushed up on the ceiling of the cab and, as he did so, an upholstery button came loose; there was wet glue around the button, and a bottle of glue was found on a shelf above the driver's seat. The officer pulled the ceiling down slightly and saw a steel plate, which, he stated, was not typically found in truck cab ceilings. As he pushed the steel plate, he saw a void in the ceiling area. Inside that void were brick-like objects, lined up across the ceiling. The officer removed one of the objects, which was packaged in "Saran wrap," and saw that it consisted of a white powdery substance. A search of the ceiling area revealed 85 of the brick-like objects.

---

[4] For instance, the officer explained that the documents had indicated that the truck was destined for Montezuma, Georgia, not Atlanta as Salazar had claimed; travel along I-20 would have been an indirect route from the place of the truck's origin; the truck carried a load of produce, but the trailer was bolted shut, which was unusual; the truck's weight ticket was handwritten and had scratch marks on it, which was also unusual, suggesting that the weight record had been changed to account for cargo that had been added to the load; and there were discrepancies between the weight ticket and the log book.

Subsequent testing showed that the substance tested positive for cocaine, and the net weight of the one package tested was 1,020 grams, with a purity of 67.6 percent.[5]

A person who had been jailed with Salazar before trial testified that Salazar told him in jail that he knew he had been transporting cocaine at the time of his arrest, and that he had been transporting a larger amount of cocaine than the charge reflected. A second person who had been jailed with Salazar before trial testified that Salazar told him that police officers had under-reported the amount of drugs that he had; and that he could get drugs for the witness, a drug dealer, for less money than the witness had been paying.

The indictment charged Salazar with trafficking in cocaine, alleging that he had knowingly possessed 400 grams or more of a mixture with a purity of ten percent or

---

[5] Although there were four boxes of the substance, each of which contained multiple packages or bricks, the witness (a forensic chemist) did not test each of the bricks. She did visually inspect and weigh all of the packages, and testified that the net weight of the substance (cocaine) contained in one of the four boxes was 19,000 grams; the gross weight of the contents of the other boxes (minus the weight of the boxes) was 74,895 grams.

more of cocaine,[6] and that he had operated a vehicle with a false or secret compartment.[7]

(a) Contrary to Salazar's contention, operating a vehicle with a false compartment is not a "predicate offense" of trafficking in cocaine. The offense of trafficking in cocaine does not require, as an essential element, that a defendant be charged with or convicted of a false compartment offense as a predicate offense.[8]

Assuming arguendo that there was an irreconcilable conflict in the verdicts, the Supreme Court of Georgia has

---

[6] OCGA § 16-13-31 (a) (1) (C).

[7] The indictment also charged Margarito Moreno, the truck's purported owner, with the same offenses. Before trial, Moreno pled guilty to charges of trafficking in cocaine (28-200 grams) (OCGA § 16-13-31 (a) (1) (A)), and operating a vehicle with a false compartment.

[8] See OCGA § 16-13-31 (a) (1). See, e.g., *Leachman v. State*, 286 Ga. App. 708, 709-710 (649 SE2d 886) (2007). For examples of crimes requiring predicate offenses, see generally *King v. Waters*, 278 Ga. 122-124 (1), (2) (598 SE2d 476) (2004) (involving the "compound offense" of possession of a firearm during commission of a crime and the "predicate or underlying offense" of aggravated assault on a peace officer); *Cochran v. State*, 288 Ga. App. 538, 540 (1) (654 SE2d 458) (2007) (an indictment for fleeing or attempting to elude a police officer pursuant to OCGA § 40-6-395 (a) must contain one of the four designated predicate offenses required for conviction of a felony under the fleeing or attempting to elude statute); *Duncan v. State*, 183 Ga. App. 368, 370 (5) (358 SE2d 910) (1987) (proof of the elements of first degree homicide requires proof of the elements of the underlying traffic violation).

6

abolished the rule that inconsistent verdicts in irreconcilable conflict in criminal cases warranted reversal, [explaining that] inconsistent verdicts could be the result of jury mistake, compromise, or lenity, but it is unknown whether the mistake, compromise, or lenity was exercised in favor of the defendant or the prosecution. Appellate courts cannot know and should not speculate why a jury acquitted on one offense and convicted on another offense.[9]

In this case, the record does not make transparent the jury's reasoning, and Salazar's contention is without merit.[10]

(b) The evidence was sufficient for a rational trier of fact to find beyond a reasonable doubt that Salazar committed the offense of trafficking in cocaine.

In cases involving contraband found in automobiles, the State is generally entitled to an evidentiary presumption that the owner or driver of the automobile is in constructive possession of the contraband. Here, there was . . . evidence indicating that [Salazar] . . . controlled the vehicle in which the cocaine was found. . . .Thus, evidence existed for

[9] *Harris v. State*, 310 Ga. App. 460, 461 (713 SE2d 665) (2011) (punctuation and footnote omitted); see *Coleman v. State*, 286 Ga. 291, 296 (4) (687 SE2d 427) (2009).

[10] See *Jackson v. State*, 322 Ga. App. 196, 200-201 (3) (744 SE2d 380) (2013); *Harris*, supra at 462; *McDaniel v. State*, 261 Ga. App. 360, 362 (3) (583 SE2d 141) (2003).

the jury to find that [Salazar] was guilty of trafficking in cocaine beyond a reasonable doubt.[11]

"Furthermore, . . . knowledge may be proved by facts and circumstances from which a jury could reasonably infer that a defendant knowingly possessed contraband."[12] Indeed, OCGA § 16-2-6 provides that a jury may find criminal intention "upon consideration of the words, conduct, demeanor, motive, and all other circumstances connected with the act for which the accused is prosecuted." Here, a finding "that [Salazar] knew that the vehicle . . . which he was [operating] . . . contained the cocaine . . . could be inferred from the circumstances."[13] Although Salazar asserts that there were conflicts in the evidence and that some witnesses lacked credibility, it was for the jury to resolve conflicts in the evidence, and assess the credibility of the witnesses.[14]

---

[11] *Feliciano v. State*, 302 Ga. App. 328, 331 (690 SE2d 680) (2010) (citations, punctuation and footnotes omitted).

[12] Id. (citations, punctuation and footnotes omitted).

[13] Id.

[14] See generally *Hayes v. State*, 292 Ga. 506, 509 (739 SE2d 313) (2013); *Harris*, supra.

Accordingly, the evidence was sufficient to support the jury's verdict beyond a reasonable doubt that Salazar knowingly possessed the cocaine found in the truck's cab, and that he was guilty of trafficking in cocaine.[15]

2. Salazar contends that the trial court erred by denying his motion to suppress the contraband seized during the search of the truck. Salazar has not preserved the issue for appellate review because at trial his counsel affirmatively stated that he had no objection to admission of the evidence. "In so doing, counsel waived any objection, including those raised in his motion to suppress."[16]

*Judgment affirmed. Ellington, P. J., and Branch, J., concur.*

---

[15] See *Jackson*, supra at 198 (1); *Feliciano*, supra at 331-332; *Simmons*, supra at 23 (1) (a).

[16] *Williams v. State*, 314 Ga. App. 840, 843 (4) (a) (726 SE2d 66) (2012) (citation and punctuation omitted); see *Nowlin v. State*, 260 Ga. App. 903, 904 (581 SE2d 413) (2003).